All right, we have one more argument in this wonderful courtroom. And we will proceed to that case number 22-20627, Anderson versus Harris County. And we will begin with Anderson's attorney that I'll let you pronounce. Scott, Scott Pershkey, like a person, a key. Okay. All right, thank you very much. May it please the court. This is a case, obviously, about 1983. It's about policymaking functions. I've attempted to try to go back and take a look at, and look at the prior cases. I have given you all, I have passed out to you a demonstrative. I've attempted to look at some of those cases and analyze them and put them on a chart. Basically, what we're at is the United States Supreme Court in McMillan has sort of laid out the foundational test on this. And the Supreme Court has indicated and mandated that the final policymaker question cannot be decided in a vacuum. It's not an all or nothing manner. Additionally, in other cases- By starting with McMillan, are you suggesting that that's changed Fifth Circuit precedent, and particularly the road decision? No, not at all. And if I can address that, the road decision, there's nothing that I'm advocating today that would impact this panel's, you know, the holding of road and what it means. Because I think what has happened when looking at road and looking at those cases that came afterwards. Basically, a lot of them, most of them are unpublished. And there are unpublished, they say they're not Presidential Fifth Circuit authority, but in practice, they sort of have become. Well, I agree with you, just focusing on that published authority. When the court says, sort of at the outset, it's rule of law, quote, we are unpersuaded that a constable of a Texas county precinct occupies a relationship to the county such that his acts may be said to represent official county policy, how isn't that conclusive of this situation? Because what you need to understand is, the mandate of McMillan says, you have to look to the particular area, you have to look to the particular constitutional violation at issue. And I think you have to look at what is the constitutional violation at issue here. Judge, you were on the panel already, that was back when we talked about it back in December, I believe. But being familiar with that, Diaz politically discriminated. The plaintiffs didn't support him politically. How was Diaz's alleged discrimination, what official policy motivated that, was the moving force? Where do we look to see the policy? Was it Diaz himself? Correct, it was Diaz himself. But isn't that really what Judge Goldberg was saying in dissent in Rode? He was saying if you elect someone to be the head, then they're the policy maker for that elected division. But that's the dissent. Correct, but if you look at it though, and if you look at the end of Rode, they state, they say we need not reconcile these holdings today. And what they're talking about is a case called Crane versus State of Texas. They said a DA is a policy maker. They say whether or not a county official discharging a duty imposed by state law can ever be considered a county policy maker, we're not gonna address that today, right? They say we hold that Denson, as a constable, lacked the power to make county policy. Now they should have gone one step further and said, as to arrests. And so Denson, Rode, actually Rode holds that it's relative arrests. And so that case, there's nothing wrong, the law in it is correct. But here the defendant is Harris County. Correct. Eight precincts. Correct. Eight elected constables. Correct. How is it just even logically sensible to say that any one of the eight declares policy for the county? Well, you have to look at the particular area. And so we're talking about employment law. What's the constitutional violation here at issue? The constitutional violation is these deputies that were terminated. And so that's the issue you look at. And so you look at and then you say, is Diaz a policy maker for that policy, office, employment, human resource, termination policies? And so that's what you have to frame that. And so what the other cases have done afterwards is that they've said, no, it's just the Fifth Circuit says a constable can never be a policy maker. That's not what Rode holds. Rode holds that it's only as to arrests. And so you have to look at, really the issue is whether or not Diaz is a policy maker for Harris County, the entire county, on the termination of deputies' employment within Precinct 2. Does Constable Diaz speak for all of Harris County with regards to how deputies are terminated in Precinct 2? And ultimately, you have two authorities to look at to address that issue. If you look under the Monell Liability Analysis, there's various ways to look at policy making authority. I've found three. The only one that's relevant is one that states the acts or policies of officers who by law, that's number one. Or number two, or delegation, that's number two. So that's my two issues. Issue number one is law. Issue number two is delegation. Possesses final policy making authority for local government concerning the action as alleged to have caused the particular constitutional or statutory violation. And again, that's when I get back to you have to frame that what is the action that is determined to be unconstitutional in this case. And that is when you terminate these deputies under Precinct 2 and the two deputies, obviously the plaintiffs, Anderson and Clark. And so it's not, what I'm asking the court to consider is to set the record straight, to look at those other opinions. When you look at all those other opinions that came afterwards, they've sort of misconstrued it, they've oversimplified it. They've said that it's impossible for Constable Diaz to ever be a policy maker in Harris County. And that's just not the case. And that's when you go and you look at the law. Is Tonkin the most penalious in terms of facts and authority? No, I would say, I mean, I would say that- The most difficult for your position. Well, I mean, I don't think so because if you look at how the case was analyzed in Tonkin and in the other, what was it, Tonkin and Brodin. If you look at both of those, they don't analyze the law, okay? So they're not looking at the law. There's one footnote to, and I put it in my chart, where in Tonkin they do reference footnote three, where they talk about the local government code, the statutes at issue. And then they say that in the commissioner's court oversees that appointment. And so you have to analyze the law, you have to go through the law. That's what McMillan says that we do in this context. Do you disagree that the law is a municipality can be held liable only when it delegates policy-making authority, not when it delegates decision-making authority? Correct. I do not disagree with that. Okay, and why isn't this a decision to fire someone as opposed to a policy? Because there's not a policy, I mean, Diaz didn't issue, to my knowledge, no one issued a policy that said, oh, well, anyone that doesn't vote for me is going to be fired. That's not a policy that was issued by anyone, as far as I know. Oh, it was. That was absolutely what Diaz said. But he didn't issue that as a policy. I mean, in other words, I mean, yes, maybe he whispered over, hey, you better do my campaign or I'm going to fire you. That's different, though, from creating a policy. I don't see the distinction. That's what he did in the office. That's what he utilized it for. That was what we believe that, and that's a fact issue for the jury, to determine whether or not, and we argue that he did do that. He created the policy at precinct two by saying- Okay, but Harris County didn't give him the ability to do a policy on that question. He could fire someone and say, ah, you're not doing a very good job, I'm going to fire you, and maybe everybody else at Harris County didn't think that person was doing a very bad job. But he didn't issue a policy that Harris County saw and said, oh, yes, you have the right to that policy. Because you would definitely hide that as the person doing that, because you know it's unethical to demand that people work on your campaign when they work for you. Right, and this court's already determined that, the panel with Judge Higginson has already determined that it is, the constable lacks qualified immunity to that. What I'm saying is that you have to look at the law. McMillan mandates that you look at the law. So if you go through the Texas law, it's very clear that the commissioner's court cannot influence the appointment of a deputy. Deputies can be allocated, funds can be allocated, but the specific money, that's it. They can't determine who goes in there. I'm sure that the county commissioners, if they knew this was a policy, would change that. They can't. It's impossible. Oh, they absolutely could. They could say, you cannot issue a policy on making people work on your campaign. No, they cannot. Because the law's specific. What law says they can't do that? It's under the local government code. It is 151003. The commissioner's court approves, and this is outlined in Harris County versus Nagel, commissioner's court approves the number of deputies the constable may appoint, but that's it. They allocate the money, they approve the number, but the law is clear that it has no authority to appoint or terminate deputy constables. That is clear in Texas law. But there's no Texas law that says they can't create them. I mean, for example, somebody that works as a police officer probably needs certain licenses, needs this, needs that, so that has to be out there somewhere. And the constable can't say, well, hey, you over there, you want to just come be a police officer? That sounds great. Let's go do that, right? You're talking about TCOL requirements to be a police officer. But remember, the constable has staff, civilians. They have more than just police officers. No, I understand that, but what I'm saying is you're saying that he could create a policy that says, I'm going to go to Tulane University and grab all the law students and have them become police officers. That'll be fun. I don't think that would be allowed in Harris County, or even if they went to the University of Houston. But right, but what are we talking about? Remember, the point is that what is the constitutional violation at issue? We're talking about determination of deputies. That's the issue. That's the act, which must be framed. You've said he can create the policy. This quotation that I asked you about, when it delegates policy making versus decision making, that's the difference that we're talking about. And to me, hiring and firing someone is a decision, the rules of what they have to have done, what license they need, whatever. I mean, I don't know all the details on what the police officer needs. Can you just turn on whether he could do the entire county or just his district? Well, he can do the, he is the policy maker for the entire county as to how deputies are fired in Precinct 2. That he is the policy maker for Harris County as to Precinct 2. But as to Precinct 2 only. Correct. Absolutely. He speaks for Harris County for how deputies are terminated in Harris County for Precinct 2. And the law states, very clearly under Texas law, a commissioner's. But the question here is, is he a policy maker for the entire county? And he is. That's absolutely what I'm saying. He is the policy maker for the entire county as it relates to the active issue and terminating deputies that are in Precinct 2. His own precinct. And his precinct. And he speaks for the voters of Harris County. He's answerable to no one else but the voters of Harris County that live in Precinct 2. To me, I'm going to go back to the beginning. That is virtually Judge Goldberg's dissent. He's quote, top dog, as elected by the precinct persons. But that's exactly the argument that lost. That that relationship is not one that makes his acts represent the county, especially a county with eight precincts. So I guess let me turn that into a question. This chart, eight or nine cases, you're making a strong case that our law, much of it unpublished, has oversimplified Texas law. But what circuit authority do you have that would hold a constable to be the representative of the county? Do you have any authority? The authority is that if you look at Brady, Brady states, as indicated above, the fact that under Texas law, no other official or government entity of the county exerts any control over the sheriff's discretion. And so what I'm advocating is that there's no difference between this. So I'm sorry. I'm sure it's in your brief. But the Brady decision. The Brady decision. That did hold, that attributed on a delegation theory or ratification theory? This is under the law theory. Yeah, but so the constable was the one who set countywide policy in Brady, when I look at that. Brady? No, it had to do with the sheriff. And the sheriff is the whole county. Right, it is whole county. And so is Constable Diaz. See, the issue, though, is that you have to. The whole county did not vote for him. The whole county is not influenced by him. The whole county is not decided by him. 1 8th of the county is. That's it, right? Correct. But when Texas law is clear that the commissioner's court, the lawmaking body of Harris County, cannot exert any control over the hiring and firing of deputies, then Brady says that when you have law on point that says commissioner's court cannot exert control, then the policymaker lies with Constable Diaz. That's a rubber stamp theory. No, that is under just the legal analysis on the law part. I mean, gotten to the rubber stamp. Well, you. Yeah. You've saved time for me. I asked you a question. No, no problem. OK, now we'll hear from, oh my goodness, I won't pronounce this either. I'll let you pronounce your name for Harris County. Absolutely. Thank you, your honors. May it please the court. My name is Rhoda Thiagarajan. I'm here on behalf of Harris County, with the Harris County Attorney's Office. I will say at the beginning, if nothing else, my opposing counsel is very creative and novel. So he has pointed out that based on case law, there hasn't been published case law in the Fifth Circuit regarding this very particular issue about whether a constable is a policymaker, a final policymaker, for purposes of Section 1983 liability. And he goes to the MacMillan case, a Supreme Court case in which the Supreme Court held that you have to look at state law. And then he analyzes and says, well, in the Brady case, 1998, this court ruled that sheriffs were policymakers. And that was based on a specific case law, I'm sorry, a specific statute in which the legislature had given express authority for the actions at issue, and held the sheriffs were entitled or had discretion to do the actions at issue. And because of that, the court ruled that sheriffs, unlike constables, were policymakers because of an express statute at issue. And that was in 1998. Subsequent to that, there's been numerous case law. There's been 20 years of case law, starting with 2002 in the Bowles court, 2002 in the Hib case, 2002 in the Pena case, 2003 in the Keenan case, which was a termination case by termination of a constable's employees, excuse me. 2004 in the Frank case, which was a sexual harassment case. OK, can I ask you about that same quote that I was wondering about? Your opponent said this was policymaking, whereas I thought it was decision-making to hire or fire someone. Which one do you think it is, and how do you explain that? So specifically, section 1983 talks about final policymaker. There are instances in which, such as in the Murphy case, there was express statute. But with respect to hiring and firing, even though the constable has final decision-making authority, that doesn't make him a final policymaker with respect to the entire county. As many cases have pointed out, sheriffs are different than constables. As you pointed out earlier, sheriffs are elected. They do make policy for the entire county. Constables, eight of them in Harris County, can only deal with their particular employees. Well, where is the policy of kind of who he can hire and what they need to have done to get hired, licenses, et cetera, et cetera? Because he's saying the policy is you have to work on my campaign. That's one of the policies made by the constable. And to me, that's just simply hiring and firing people based on whether they're supporting your campaign or not, which is different from a policy, because I can't imagine that Harris County would accept that policy, because it's not ethical. Correct. So I'm just trying to figure that out. He made a strong argument about this is a policy, has the right to make, because that's deferred to him. How do you show that's not a policy that was deferred to him, or policy making that was deferred to him? Well, if you're saying his employment decisions, dealing with hiring and firing, and his allegations that this particular constable decided that if you don't work for me on my campaign, then I'm going to fire you, that again, it has to be a final policy of the entire county. And in this situation, Well, isn't that the whole question here? Whether it's his authority goes beyond his area for the entire county? It cannot. Simply by the way he said, the only people that he's answerable to is precinct two. Well, isn't that the sole question here? Right, so my analysis would be that based on the case law, this court has continued to rule that in employment situations, the constable is not a final policy maker for the county. I mean, just change the facts then. There are some counties that only have one precinct. So if it's just a geography question, is your position that the constable in those counties still isn't both final decision maker, and therefore also final, if it's just a geography issue? I don't think so. I think the cases have analyzed, the few cases that have held, in particular situations that constables are policy makers for that particular situation. Again, you have to look at the fact scenario of what is the constitutional issue. And did the constable have final policy making for that particular issue? Expressly delegated? It could be expressly delegated, as I believe the. Well, what this case seems to be inching for, and opposing counsel can clarify, he's saying their policy is defective. It's complete abdication. The policy allows him to hire and fire even violative of the First Amendment. And that's attributable to the county if they have no restrictions. And my hypothetical is, imagine we're in a county where there's only one constable. So in that situation, you would need to have some express delegation from either commissioners court or some other, well, in this situation, commissioners court, or express statute that says, state statute that says, in employment decisions, the constable is the final policy maker. And we don't have that here. So I think in situations where, I think in the Nagel case, there was an express authority granted from commissioners court for a particular precinct to do warrants for the entire county. But instead of expressly delegating it, they simply never at all look over it. And therefore, it becomes sort of a wild west. No, I don't think that's the situation. I think there's got to be an express. Because again, you're talking about Section 1983 liability. When you're saying the county is going to be liable for something that an official does, there has to be that authority granted. And it has to be applied. Let me ask you this. If he put up a big sign outside of this building that says, I have come up with a policy that says, you must work on my campaign or you will be fired. And when I hire you, you better promise to work on my campaign. Would the Harris County Commissioners Court be able to ban that policy? I believe that they would at that point have the ability to, at least at that point, go into some kind of discussion with the constable. I don't know that he would have the unfettered discretion to commit illegal acts. And at the same point, he would also be independently liable as an individual. No, I understand that. But I'm just asking, could they vote, we ban that policy that's up outside his building on that chart? I believe that they could. I believe Commissioners Court has that. Because isn't that the Commissioners Court's authority? Right. They have the authority over the entire county. Because although there's commissioners for different areas, there are at-large commissioners. And their decisions affect the entire county. Well, the Commissioners Court is what runs the county. It's not each individual commissioner. It's the group. Correct. So they are elected by different parts of the county, at least in Dallas. But then they come together and vote. I'm well aware of that. I was a state district judge for eight years.  Right. And so in this instance, they would be able to vote. I mean, I've got this quote that maybe I'm the only one who thinks it matters. But it does seem to differentiate between policymaking and decision making. So I'm just trying to understand the arguments on that here. Right. I think with respect to these particular decisions, that falls under employment decisions. That doesn't rise to the level of a final policymaker. OK. So that was my question. Absent some kind of express statute. Where is the statutes on who can be hired? In other words, what statistics, what license, what background, what do they need to be able, what resume do they need? So for the most part, those kinds of, with respect to peace officers, are in the local government code. And that sets forth. They do give discretion to sheriffs and constables to make hiring decisions. But again, a lot of the nuts and bolts of peace officers is in the local government code. Because, for example, I have the right to hire law clerks I want to hire. But they need to be lawyers. And there are certain rules about what that means. And so I couldn't just go out on the street and grab someone and say, hey, you can be my law clerk. So basically, that would be in the local government code. And also, TCOL, which deals with peace officers specifically. OK. So I'd go back to the analysis of the cases that since 2004. Well, and one more. He kept saying he is the one for precinct two. And thinks that is the county's precinct two. What is your answer to that? That this is the person? If he is the person for precinct two, then we would have basically eight decision makers for the county. And that would lead to the absurd result that really there would be no one set policy. And again, I go back to the underlying linchpin of section 1983 liability, which is you're holding a government entity responsible for an official policy. And that means that whoever makes that policy has to have been embodied with some sort of authority. And this authority is not here, because there's no statute. And there's no express delegation by commissioner's court. And I would point out the two cases that have held that constables or sheriffs are responsible almost invariably have ruled based on some express statute or some express delegation by commissioner's court. We ask this court to establish that this precedent that's been ruled the same way for over 20 years is, in fact, the precedent and correct rule of the Fifth Circuit. Specifically, that constables are not policymakers with respect to employment matters. And there's nothing that opposing counsel has shown that this is bad precedent in any way. With respect to the ratification argument, we would point out, again, that there's no policy at that issue. There's no proof that any person or any facts to show that Harris County was aware of this policy, such that you could then impute liability to the county. What about the rubber stamp? So the rubber stamp would still require some knowledge to impute liability. And again, there's no facts to even show that anyone, commissioner's court, or anyone else knew about this alleged policy that the constable may have had. I do have to say, having run for office in Texas, it would be a little hard to imagine the Harris County Commissioner's Court would know about what he was doing and just say, oh, that's fine. Rubber stamp. Correct. Correct. And I think even if you look at the opinion in the lower court from Judge Miller, he acknowledged that in his previous opinion, the Murphy v. Butler case, in which it was a very similar situation, Judge Miller, at that point, is when he discussed the rubber stamp exception. And he held the county liable. And that case was prior to this court's decision in Tonkin. And in his opinion, Judge Miller states that if he had had the benefit of the Tonkin decision and all the cases subsequent to that, he would have been able to rule. And he thought now that based on that precedent, he would rule. And he did rule in favor of the county and decided that. Is there contention that he's a policymaker for his own area but not the entire county? He can set policy with respect to employment and hiring decisions for his own precinct. But I would not call him the final policymaker for the county. And I think the case law has said that decision making is not the same as policymaking. It's the area, not whether he can be a policymaker within his own precinct. The issue for governmental liability is that he needs to be the final policymaker for the entire county to impute Section 1983 liability. OK. Anything else you want to tell us? I would just wrap up. Based on the case law and the lower court's opinion, that really wrestled with the issue and discussed the case law quite thoroughly, that this court, that the lower court was correct. And we request that this court affirm the district court's opinion. Thank you. All right. Thank you. Can I take your time? You are creative. You have five minutes of rebuttal. OK. To answer Judge Heap. We're the policymakers on that. You have five minutes of rebuttal. To answer Judge Higgins' question, also take a look at the case of Harris County versus Coates, 607 Southwest 3rd, 359. States very clearly, Constable Hickman has the final word in Precinct 4 as the office policies. And by extension, one could also infer that each of the eight constables in Harris County is responsible for policies in his or her separate precinct. Regardless of the fact that it's divided up eight ways, or you divide up one constable per county, it doesn't make a difference. Because each of the constables is the policymaker for those office policies. The case of Harris County versus Coates is directly on point. It's well-reasoned. It's well-analyzed by the first 14th. And because we're talking about an issue of state law, there needs to be some deference given by this panel to the actual state law, which is seriously lacking in the other non-published opinions that have come before you. Additionally, one of the things that Harris County has stated in their brief is that they very clearly stated there is no such policy in this case at hand. In reviewing plaintiff's third amendment complaint, there are absolutely no facts regarding a specific official policy of Harris County. That's correct, because as to these office, employment, termination, discipline, hiring matters, there is no policy. There is none. I provided for you an affidavit from a constable that was there for 16 years. Please take a look at it. This is how the government is set up in Harris County. The problem that you have in this case is that if you decide that DS is not the policymaker for employment HR-related decisions, and neither does commissioners court the policymaker, because there is no policy, there is none for precinct two, then effectively what this panel has done is said that there is no policymaker. If commissioners court isn't going to do anything, and constable DS isn't the policymaker, you kind of run into an area where there is no policymaker. The problem to me is this just isn't a proper policy. I mean, they're also not going to make a policy. You have to sit around taking marijuana every day to work in my court. I would never say that, so that's in quotes, everyone. But that just isn't something that there's a policy in the US, or in the Congress, or whatever. Because nobody's going to have that. I mean, that's just crazy. So I could come up with a long list of crazy things that is nowhere in any document, because it's crazy. And that's the problem with this one, is this is improper. And that's the problem with it. So also ordering that everyone has to take marijuana every day is improper to order that. Whereas imposing that everyone has to get here by 8 AM would not be improper. Where's the policy? Go look in the record at 2856, 2857. That's briefing submitted on the underlying immunity issue. It states, Constable Diaz says, there can be no reasonable argument but that Luman, and that was the chief deputy, was a confidential employee who participated in Constable Diaz  to Constable's office. He goes along in saying, is that chief deputy, Luman assisted Constable Diaz in formulating, carrying out Constable Diaz directions, and vision for the precinct. He delineates in his summary judgment briefing six points on those pages about what the goals were. The case law states, under Rode, a policymaker not only governs conduct, but decides goals for a particular local government function, and devises means of achieving those goals. That's directly what Constable Diaz does and is stated in his briefing. And it's directly on point. Those are the policies. He set forth those goals. He hired the chief deputy. And he terminated the chief deputy. And he did so based on those policies for carrying out the Constable Diaz directions and visions for that precinct. But that is your case that's going forward against him. It is. Here, you're saying there is no county policy, and yet you're saying somehow it was still an official policy that motivated him as to how he treated his subordinates. Correct. And so if he is the policymaker, then Harris County becomes liable under Rodeo. Vicarious liability based on his act? No. No, not vicarious liability. Based upon, there is no vicarious liability in 1983. It has to do with if the official act, in this case, termination of, for example, Chief Luman, if Diaz is the policymaker, then that binds Harris County under Monell. All right. Thank you. Thank you, both sides. The case is under submission. And we have now concluded our arguments for the day. We will start again tomorrow.